IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
ABERDEEN DIVISION

VICTOR LASHUN MOSLEY                                              PLAINTIFF

V.                                                       CIVIL ACTION NO, 1:19-CV-114-DAS

COMMISSIONER OF SOCIAL SECURITY                          DEFENDANT

**MEMORANDUM OPINION**

This matter is before the court on the plaintiff's complaint for judicial review of the decision of the final decision of the Commissioner of Social Security denying Social Security Disability benefits to the plaintiff. The parties have consented to entry of final judgment by the United States Magistrate Judge and 28 U.S.C. § 636 (c), with any appeal to the Court of Appeals for the Fifth Circuit. The court, having reviewed the record, the administrative transcript, the briefs of the parties, the applicable law and having heard oral argument, finds as follows, to wit:

**1. THE ALJ'S DECISION**

The plaintiff was forty-six years old at the time of the hearing and had two years of college education. He had a certificate in auto mechanics and had past work experience as an assembly worker, maintenance man, forklift driver, taxi driver, grounds keeper, garbage man and a sales associate. The ALJ found that he had the following severe impairments: deep vein thrombosis, degenerative disc disease of the cervical spine, chronic obstructive pulmonary disease, pulmonary embolism, and obesity. The ALJ found the plaintiff could perform sedentary

work except he would need a sit/stand option that would allow the person to alternate from sitting to standing and from standing to sitting for 10 minutes after every hour. The plaintiff could never use foot controls with the left lower extremity; never climb ladders, ropes or scaffolds; only occasionally climb ramps and stairs and was limited to occasional exposure to extreme heat, cold or pulmonary irritants, such as fumes, odors, dust, gases, and poorly ventilated areas. The ALJ additionally found that he would need to elevate his left leg periodically throughout the day to stool level.

Mosley had swelling and pain in his left leg because of recurrent deep vein thrombosis, which limited his ability to stand for very long. But when he was prescribed Zarelto, though he was still having some swelling, he was doing well and not experiencing significant pain. He ambulated without difficulty and had normal range of motion on musculoskeletal examinations.

He said his chronic obstructive pulmonary disease caused shortness of breath and kept him from walking long distances. He continued to smoke some and took albuterol for the shortness of breath. He claimed he could stand for twenty or thirty minutes at a time and sit for approximately the same length of time. He had some cervical spine straightening secondary to muscle spasms and mild spondylosis at C-4-C-5 and C5-C6. He took Tramadol for his back pain. Dr. Fleetwood performed a consultative examination. Mosley's pulmonary function study was normal. His cervical spine showed normal flexion, extension, rotation and lateral function. He had normal motor strength, symmetric deep tendon reflexes and his joints appear normal. He was able to squat and recover without assistance. She found he could lift and carry twenty pounds frequently and twenty-five pounds occasionally. At six foot one, his weight ranged from two hundred forty pounds to two hundred ninety-eight pounds.

The ALJ held that based on the RFC the plaintiff could not perform any past relevant work but could perform three different sedentary jobs and was, therefore, not disabled.

## 2. ISSUES RAISED

The plaintiff has broken down his argument under three headings. The first issue raised addresses two prongs: A) that the ALJ erred in failing to recognize the seriousness of the plaintiff's need to elevate his left leg; and B) erred in assessing the RFC because of the plaintiff's need for a sit/stand option. The second argument is that the ALJ erred in creating an RFC from a bare medical record with "no supporting medical opinions" and in failing to request a second consultative examination or obtaining a medical expert to testify at the hearing. Under the third issue the plaintiff makes two related arguments: that the ALJ erred in failing to properly consider the report of the plaintiff's treating physician (Dr. Borden) and in failing to order a medical expert.

### A. RFC WITH NEED TO ELEVATE LEG AND RFC SIT/STAND OPTION

The plaintiff argues that the ALJ failed to properly evaluate and consider the plaintiff's need to elevate his leg. The plaintiff testified at the hearing that he frequently needed to elevate his leg because of swelling caused by chronic venous insufficiency. His testimony did not specify whether he needed to have his leg elevated to stool height or hip height. The ALJ asked the vocational expert if jobs would be available for an individual who had to frequently elevate their leg to hip height. The vocational expert testified there would be no jobs available with that limitation. He also asked the VE if jobs would be available if the plaintiff need to raise his leg on a stool. The VE said that there would be no problem if he needed to use a stool.

Plaintiff argues that the ALJ should have recognized that he needed to raise his leg up to hip height to reduce the swelling, which would have rendered him disabled. The court finds

there is no error.  The plaintiff himself did not testify about how high he had to raise his leg, and the plaintiff conceded at oral argument that the medical records do not contain any instruction from any medical provider indicating any need to elevate the leg.

The plaintiff raised an interesting argument concerning the sit/stand option assessed by the ALJ.  The ALJ found the plaintiff could work at a sedentary level, but included a uniquely worded sit/stand option.  Specifically, the ALJ found the plaintiff would need a sit/stand option "that would allow for the person to alternate from sitting to standing and from standing to sitting for 10 minutes after every hour."  The plaintiff argues that this sit stand option would, with sitting as the main position, result in less than two hours of standing time, and therefore would place the plaintiff at a less than sedentary level of exertion.

Supplemental briefs by the parties have not yielded any cases addressing this specific issue.  The government argues that the VE provided jobs with this sit/stand option and there is no conflict with the DOT in the VE's testimony.  The plaintiff continues to argue that the sit/stand option means that he is not capable of even sedentary work.

The court does not agree with the plaintiff's rigid interpretation of the sit/stand option. Plaintiff interprets the sit/stand option as a precise mandate that means the plaintiff must sit for precisely one hour; stand precisely for ten minutes; then return to sitting for precisely one hour. This interpretation flies in the face of work-place realities.

The court interprets the option as more permissive and flexible.  It references changing from sitting to standing and vice versa.  It does not mandate either the time the plaintiff must spend sitting or the time he must spend walking and standing.  The court interprets this sit/stand option as providing that whether sitting or standing, the plaintiff would never have to *maintain a postural position for more than one hour* at a time, and that after changing positions, the job

would have to allow him *at least ten minutes before returning to the prior position.* The described sit/stand option sets the maximum time the plaintiff had to hold the initial posture. It describes the minimum, not maximum time, for the following postural position. One example of a sit/stand option that meets the above requirement would be a job where the plaintiff sat for 45 minutes (less than the maximum) and stood for 15 minutes (more than the minimum). This ALJ is simply describing a sit/stand option that is more restricted than "at will." While this court admittedly initially struggled with the novel wording, nothing in the record indicates the VE had similar difficulties or failed to understand what the ALJ meant. The court therefore finds there was no error as to this issue.

### B  RFC ASSESSMENT NOT SUPPORTED BY MEDICAL OPINION

The court finds no error in the ALJ's determination of the plaintiff's residual functional capacity. There were opinions from the DDS physicians who opined the plaintiff could perform light work. In considering other severe impairments shown by Mosley's hearing testimony and later medical records from his primary treating physician, the ALJ decided to reject the DDS opinions and find that Mosley could only perform only a limited range of sedentary work. While the treating physician did not provide a medical source statement, the ALJ discussed her findings in some detail, including findings that his DVT was recurrent and caused him pain. When the doctor responded to the recurrence by telling Mosley he needed to take Zarelto permanently, his leg continued to swell, but he had no significant pain. The ALJ also noted this doctor found that Mosley could ambulate without tenderness or difficulty.

Because of questions about his pulmonary status, the ALJ ordered a post-hearing CE with Dr. Fleetwood and required a pulmonary function test. The ALJ gave Fleetwood's opinion limited weight because she relied on Mosley's subjective complaints. The plaintiff argues that

the ALJ should have ordered an additional CE or a called a medical expert if he was not going to rely on Dr. Fleetwood's report. Because the ALJ was concerned about Mosley's pulmonary status, and the CE answered that concern, the court does not find the failure to order another CE was error.

The plaintiff also complains about the fact that a couple of pages from Fleetwood's report are missing from the record. Because there is no showing that the ALJ saw or considered the missing pages -- nor proof that these pages would make a difference in the outcome -- the court finds the error is harmless.

### C. FAILURE TO ORDER ME TESTIMONY

Finally, the plaintiff argues the ALJ failed to properly consider the records of Dr. Borden, who treated Mosley for his recurrent deep vein thrombosis. He suggests that the ALJ needed the assistance of a medical expert to understand the disease and to recognize that sporadic clearing of symptoms did not mean this condition had resolved. Whether to call a medical expert would be a matter for the ALJ to decide, and given the existence of the DDS expert opinions and the consideration of the treating physician's treatment notes, the court does not find the failure to obtain testimony from a medical expert was error.

### CONCLUSION

For the above reasons, the court finds that the decision is supported by substantial evidence, and that there is no reversible error of law. A judgment shall be entered affirming the decision of the Commissioner of the Social Security Administration.

 **THIS,** the 22nd day of July, 2020.

/s/ David A. Sanders
U.S. MAGISTRATE JUDGE